| | |
|---|---|
| **CAPSTAR FINANCIAL HOLDINGS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 3:17-cv-01421** |
| **v.** ) | **Judge Aleta A. Trauger** |
| ) | |
| **GAYLON M. LAWRENCE and THE LAWRENCE** ) | |
| **GROUP,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Defendants Gaylon M. Lawrence and The Lawrence Group[1] (collectively "Lawrence" or "Defendants") hereby file this response in opposition to the Motion for Expedited Discovery (ECF No. 9) filed by CapStar Financial Holdings, Inc. ("CapStar" or "Plaintiff").

## INTRODUCTION

This lawsuit amounts to nothing more than an attempt by CapStar's current Chairman of the Board of Directors, Dennis C. Bottorff ("Denny Bottorff"), to intimidate Gaylon Lawrence ("Mr. Lawrence") and to deter him from individually acquiring any additional shares of CapStar stock. The allegations set forth in the Complaint are based on half-truths and false innuendo, which, even if true, do not amount to viable claims for relief by CapStar as a matter of law. Denny Bottorff's attempt to bully Mr. Lawrence by initiating this litigation on behalf of CapStar is not supported by the law or fact and is in direct contradiction to Congress's intent in passing the Securities Exchange Act of 1934. In sum, CapStar's Complaint fails to state a claim upon

---

[1] Defendant Gaylon M. Lawrence objects to the inclusion of The Lawrence Group as a separate entity or as a properly named defendant in this action.

which relief can be granted, and Defendants are preparing a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), to be filed on or before Monday, November 13, 2017.

Moreover, the need for expedited discovery in this matter is moot.  Mr. Lawrence, on October 26, 2017, filed an Interagency Notice of Change in Control with the Federal Reserve, wherein Mr. Lawrence sought approval, pursuant to the federal Change in Bank Control Act, to retain up to fifteen percent (15%) of the outstanding shares of CapStar stock.  Mr. Lawrence has received a letter from the Federal Reserve Bank of Atlanta ("Reserve Bank") dated November 6, 2017 indicating that his notification appeared complete and imposing a 60-day processing period beginning October 30, 2017 and ending on December 29, 2017.  During this period, Mr. Lawrence may not acquire any additional CapStar stock unless he is notified by the Reserve Bank that additional transactions may be accomplished at an earlier date.  Therefore, Mr. Lawrence cannot, and will not, acquire any additional CapStar stock until December 29, 2017, or upon receiving notification from the Reserve Bank that he is permitted to do so.  Accordingly, the need for expedited discovery related to an unspecified, impending motion for injunctive relief in this matter is now moot.

The Court should, therefore, deny CapStar's Motion for Expedited Discovery (ECF No. 9).

## STATEMENT OF FACTS

This action arises out of a series of acquisitions of CapStar stock by Mr. Lawrence, an individual investor, in the latter half of 2017.  (Compl. ECF No. 1, ¶¶ 3-4.)  In connection with these acquisitions, as set forth below, Mr. Lawrence made the requisite filings with the Securities and Exchange Commission ("SEC") under Section 13d of the Exchange Act of 1934, and

2

provided notification to the Federal Reserve pursuant to the federal Change in Bank Control Act of 1978.

In connection with these acquisitions, Mr. Lawrence made his first Schedule 13D filing with the SEC on August 11, 2017 ("Schedule 13D Disclosure"). A true and correct copy of that filing is attached to the Declaration of Gaylon M. Lawrence, Jr. ("Lawrence Decl.") as Exhibit 1. Pursuant to his Schedule 13D Disclosure, Mr. Lawrence publicly stated that he had acquired 6.2% of the outstanding common stock of CapStar. (*Id.*) As set forth in Item 4 of the Schedule 13D Disclosure, Mr. Lawrence provided the following statement with regard to the purpose of the transaction:

> The Reporting Person [Mr. Lawrence] acquired the securities described in this Schedule 13D for investment purposes, and he intends to review his investments in the Issuer on a continuing basis. **Any actions the Reporting Person might undertake may be made at any time and from time to time without prior notice and will be dependent upon the Reporting Person's review of numerous factors, including**, but not limited to: an ongoing evaluation of the Issuer's business, financial condition, operations and prospects; price levels of the Issuer's securities; general market, industry and economic conditions; the relative attractiveness of alternative business and investment opportunities; and other future developments.

> **Depending upon overall market conditions, other investment opportunities available to the Reporting Person, and the availability of the Issuer's securities at prices that would make the purchase and sale of the Issuer's securities desirable, the Reporting Person may acquire additional securities of the Issuer,** or retain or sell all or a portion of the securities then held, in the open market or in privately negotiated transactions.

> The Reporting Person and his representatives may, from time to time, engage in discussions with members of management and the board of directors of the Issuer (the "Board"), other current or prospective shareholders, industry analysts, existing or potential strategic partners, investment and financing professionals and other third parties regarding a variety of matters related to the Issuer, which may include, among other things, the Issuer's business, management, capital structure and allocation, corporate governance, Board composition and strategic alternatives. **Except as set forth above**, the Reporting Person has no present plans or proposals which relate to or would result in any of the transactions required to be described in Item 4 of Schedule 13D.

3

(Schedule 13D Disclosure, Lawrence Decl., Ex. 1 p. 3) (emphasis added).

Subsequent to his original Schedule 13D Disclosure (and consistent with his disclosure that he may acquire additional securities of CapStar if conditions were desirable) Mr. Lawrence purchased additional CapStar securities, and made the requisite amended Schedule 13D filings with the SEC. (Lawrence Decl. ¶ 5.) Mr. Lawrence filed an Amended Schedule 13D ("Amendment No. 1") on August 25, 2017, which referenced the original Schedule 13D Disclosure and indicated that he had acquired a total of 7.2% of the outstanding common stock in CapStar. (*Id.*) A true and correct copy of Amendment No. 1 is attached to the Lawrence Decl. as Exhibit 2. (*Id.*) On September 13, 2017, Mr. Lawrence filed an Amended Schedule 13D ("Amendment No. 2"), referring to the Schedule 13D Disclosure and Amendment No. 1, and indicating that Mr. Lawrence had acquired a total of 8.2% of the outstanding common stock of CapStar. (*Id.* at ¶ 8.) A true and correct copy of Amendment No. 2 is attached to the Lawrence Decl. as Exhibit 3. (*Id.*) Again, consistent with his disclosure that he may purchase additional shares of CapStar stock if the market conditions were favorable, Mr. Lawrence then purchased additional shares and filed an Amended Schedule 13D ("Amendment No. 3") on October 4, 2017, wherein he disclosed that he had acquired a total of 9.2% of the outstanding shares of CapStar stock. (*Id.* at ¶ 10.) A true and correct copy of Amendment No. 3 is attached to the Lawrence Decl. as Exhibit 4. (*Id.*) Finally, Mr. Lawrence filed an Amended Schedule 13D on October 17, 2017 ("Amendment No. 4"), referencing the Schedule 13D Disclosure and prior amendments, and indicating that he had acquired a total of 10.2% of the outstanding stock of CapStar. (*Id.* at ¶ 12.) A true and correct copy of Amendment No. 4 is attached to the Lawrence Decl. as Exhibit 5. (*Id.*)

4

Case 3:17-cv-01421   Document 19   Filed 11/09/17   Page 4 of 16 PageID #: 173

Each of the purchases identified in the original Schedule 13D Disclosure and the amendments thereto were in the name of Mr. Lawrence individually and personally, and not indirectly through any other entity or for the benefit of anyone or any entity other than Mr. Lawrence himself.  (Lawrence Decl. ¶ 3.)

On October 18, 2017, Federal Reserve Bank of Atlanta Legal Staff contacted Mr. Lawrence's attorney and requested that Mr. Lawrence file an Interagency Notice of Change of Control as soon as possible as a result of his acquisition of more than 10% of the common stock of CapStar.  (Lawrence Decl. ¶ 13.)  Mr. Lawrence complied and filed his Interagency Notice of Change of Control ("Change of Control Notice") with the Federal Reserve Bank on October 26, 2017 (prior to the filing of this lawsuit).  (*Id.*)  A true and correct copy (redacted for personal, private financial information) of the Change of Control Notice is attached to the Lawrence Decl. as Exhibit 6.  (*Id.*)  Pursuant to that notice, Mr. Lawrence indicated that he had acquired 10.2% of the outstanding stock of CapStar, and sought approval from the Federal Reserve to acquire as much as 15% of the stock of CapStar, provided the "overall market conditions, other investment opportunities available to Mr. Lawrence, and the availability of CapStar's securities at prices that would make the purchase … of CapStar's securities desirable."  (Change of Control Notice, Lawrence Decl., Ex. 6, pp. 2-3.)

On November 6, 2017, counsel for Mr. Lawrence received a letter from the Federal Reserve Bank of Atlanta indicating that it had completed a preliminary review of the Change of Control Notice and that the notice appeared to be complete.  A true and correct copy of the November 6, 2017 letter is attached to the Lawrence Decl. as Exhibit 7.  (Lawrence Decl. ¶ 15.)  Pursuant to the Reserve Bank's letter and the Change in Bank Control Act of 1978, a 60-day processing period commenced on October 30, 2017 and will end on December 29, 2017, during

which the Reserve Bank will evaluate Mr. Lawrence's proposal to acquire up to fifteen percent (15%) of the shares of CapStar stock. (*Id.*) Mr. Lawrence is prohibited from acquiring any additional shares of CapStar stock during the processing period.[2] (*Id.*)

CapStar filed this action on Tuesday, October 31, 2017, and served Defendants with a copy of the Complaint and Summons on November 1, 2017. Through its Complaint, Plaintiff seeks, among other things, injunctive and declaratory relief pursuant to Section 13d of the Exchange Act of 1934, the Change in Bank Control Act of 1978, and Tenn. Code Ann. § 45-2-107. On Friday, November 3, 2017, Plaintiff filed a Motion for Expedited Discovery to obtain discovery from Defendants relating to Plaintiff's claim for a preliminary injunction, despite the fact that no such motion for injunctive relief has been filed with the Court and it is not clear what specific injunctive relief CapStar might request.

## ARGUMENT

CapStar is not entitled to expedited discovery in this matter. In its Motion for Expedited Discovery (ECF No. 9), CapStar does not inform the Court or the Defendants what specific injunctive relief it will be requesting in its "impending" motion for preliminary injunction. Presumably, however, CapStar contemplates enjoining Mr. Lawrence from acquiring any more shares of CapStar stock during the injunction period and wishes to take expedited discovery to gather evidence that would be relevant to such a request. However, as set forth below, the exigency for such discovery is now moot due to the 60-day processing period imposed by Reserve Bank. In addition, Defendants are preparing to file a motion to dismiss on or before November 13, 2017, wherein Defendants will demonstrate that CapStar has failed to assert any claims for which relief can be granted as a matter of law.

---

[2] The 60-day processing period could end prior to December 29, 2017 if the Reserve Bank notifies Mr. Lawrence at an earlier date that he is permitted to purchase the additional shares if he so chooses. (*Id.*)

## I.     CAPSTAR'S REQUEST FOR EXPEDITED DISCOVERY IS MOOT.

CapStar's perceived need for expedited discovery is rendered moot by the 60-day processing period implemented by the Reserve Bank under the Change in Bank Control Act of 1978.  As set forth in the November 6, 2017 letter from the Reserve Bank, the 60-day processing period imposed as a result of receiving Mr. Lawrence's notification under the Change in Bank Control Act prevents Mr. Lawrence from purchasing any additional CapStar stock until December 29, 2017, or until the Reserve Bank notifies Mr. Lawrence that he may proceed with any such purchase.  (Reserve Bank Letter, Lawrence Decl., Ex. 7.)  Because Mr. Lawrence cannot do what CapStar would seek to enjoin him from doing (*i.e.*, acquire any more CapStar stock) during this period, there is no exigent threat of immediate harm to CapStar (even assuming arguendo that Mr. Lawrence's further acquisition of stock would cause CapStar any harm at all, which it would not).

There simply is no need for expedited discovery in this matter, and CapStar has failed to demonstrate to the Court why such expedited discovery is necessary in light of the Reserve Bank's Letter and the 60-day processing period.  The Court should not permit CapStar to embark upon its expedited fishing expedition where Mr. Lawrence cannot, and will not, do what CapStar would seek to enjoin him from doing.  This is particularly true where CapStar has no viable claim for relief, much less injunctive relief, as set forth more fully below.

## II.     DEFENDANTS WILL FILE A MOTION TO DISMISS DEMONSTRATING THAT CAPSTAR'S CLAIMS FAIL AS A MATTER OF LAW, AND CAPSTAR IS NOT ENTITLED TO ANY DISCOVERY, MUCH LESS EXPEDITED DISCOVERY.

Defendants intend to file a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), on or before November 13, 2017.  As will be set forth more fully in support of that motion, CapStar's Complaint fails to state a claim upon which relief can be granted.  Because CapStar is not

7

entitled to any of the relief requested in its Complaint, as a matter of law, it is not entitled to conduct expedited discovery on its nonviable claims. The following is a brief discussion of CapStar's failure to state a viable cause of action under any of its three (3) alleged causes of action. The Court should give the parties the opportunity to fully present these Rule 12(b)(6) arguments to the Court before permitting CapStar to embark upon discovery.

A.  MR. LAWRENCE WILL DEMONSTRATE THAT CAPSTAR FAILS TO STATE A CLAIM FOR RELIEF UNDER SECTION 13d OF THE EXCHANGE ACT OF 1934.

1.  <u>On Its Face, Mr. Lawrence's Schedule 13D Disclosure Expressly Discloses Publicly The Very Information CapStar Alleges Mr. Lawrence Was Trying To Hide.</u>

CapStar claims that Mr. Lawrence's Schedule 13D Disclosure and subsequent amendments made pursuant to Section 13d of the Exchange Act of 1934 "misled the market by falsely claiming he had no plan to acquire control of CapStar or to purchase additional shares" in CapStar. (Compl., ECF No. 1 ¶¶ 4, 21, 42-46.) In support of its claim, CapStar focuses on only one small phrase contained in Mr. Lawrence's Schedule 13D Disclosure: "But under Item 4, Lawrence indicated that he had acquired the shares for 'investment purposes' and 'ha[d] no present plans or proposals' to acquire control of CapStar or purchase additional shares." (*Id.* at ¶ 21.) CapStar cherry picks language mid-sentence and misleads the Court by not discussing the full disclosure set forth in the Schedule 13D Disclosure where Mr. Lawrence tells the world that if the market conditions and share price are favorable, he "may acquire additional shares of [CapStar]." (Schedule 13D Disclosure, Lawrence Decl., Ex. 1, Item 4.)

As the full disclosure in Item 4 (which is set forth in full in the Statement of Facts section of this Response) states: "Depending upon overall market conditions, other investment opportunities available to [Mr. Lawrence], and the availability of [CapStar's] securities at prices that would make the purchase or sale of [CapStar's] securities desirable, **[Mr. Lawrence] may**

8

**acquire additional securities of the Issuer** …." (Schedule 13D Disclosure, Lawrence Decl., Ex. 1, p. 3) (emphasis added). Accordingly, Mr. Lawrence informed the world in this filing that he may acquire additional securities if he determines that the overall market conditions and stock price are favorable for the purchase of additional securities.

Additionally, Mr. Lawrence informed the world in that disclosure of his intentions with regard to how he intended to use his position as a shareholder of more than five percent (5%) of the shares of CapStar:

> [Mr. Lawrence] and his representatives may, from time to time, engage in discussions with members of management and the board of directors of [CapStar] (the "Board"), other current or prospective shareholders, industry analysts, existing or potential strategic partners, investment and financing professionals and other third parties regarding a variety of matters related to the Issuer, **which may include, among other things, the Issuer's business, management, capital structure and allocation, corporate governance, Board composition and strategic alternatives**. **Except as set forth above**, the Reporting Person has no present plans or proposals which relate to or would result in any of the transactions required to be described in Item 4 of Schedule 13D.

(*Id.*) (emphasis added).

In its Complaint, CapStar focuses solely on only <u>a portion</u> of the last sentence of the paragraph above, *i.e.*, "… the Reporting Person has no present plans or proposals …" in support of its claim that Mr. Lawrence was somehow trying to mislead the marketplace. CapStar conveniently ignores Mr. Lawrence's very specific disclosures regarding his intentions to purchase additional shares of CapStar stock if market conditions and share price are favorable. CapStar also ignores Mr. Lawrence's very specific disclosures regarding his intentions about the types of activities he may engage in as an owner of more than five percent (5%) of CapStar's stock, including without limitation, "engag[ing] in discussions with members of management and the board of directors … regarding … [CapStar's] business, management, capital structure and allocation, corporate governance, Board composition and strategic alternatives." Finally,

CapStar conveniently leaves out of any reference to the modifying clause at the beginning of the last sentence of the disclosure -- the sentence it complains so heavily about:  "**Except as set forth above**, the Reporting Person has no present plans or proposals which relate to or would result in any of the transactions required to be described in Item 4 of Schedule 13D."  The modifying language "Except as set forth above" expressly refers to the specific disclosures regarding his intentions to purchase additional shares of CapStar if market conditions and stock price are correct as well as his intentions regarding how he intends to use his position as a shareholder of greater than five percent (5%) of CapStar's stock.

No logical person could read the full Schedule 13D Disclosure in its entirety and conclude that Mr. Lawrence would not purchase additional shares of CapStar if market conditions and stock price were favorable, or that he might use his position as a shareholder of greater than five percent (5%) to engage in discussions with management, the Board, or others about the affairs of CapStar, including its "corporate governance, Board composition and strategic alternatives."  Mr. Lawrence, by making this disclosure and then amending it four times in the months that followed to reflect additional purchases of CapStar stock, expressly informed the world of everything CapStar alleges Mr. Lawrence tried to hide.  The Complaint amounts to nothing more than Denny Bottorff's intimidation tactic intended to discourage Mr. Lawrence from acquiring additional shares of CapStar stock and exercising his rights commensurate with owning the stock.  CapStar's Section 13d claim will, thus, fail upon the Court's consideration of Mr. Lawrence's forthcoming motion to dismiss.

2.     CapStar Does Not Have A Private Right Of Action For The Relief It Requests Under Section 13d.

Additionally, although counsel's research is not yet complete on this issue, CapStar does not have a private right of action for the bulk of the relief it requests under its Section 13d claim.

In its prayer for relief, CapStar requests monetary damages. (Compl. ECF No. 1 ¶ i.) It is clear, however, that CapStar does not have a private right of action under Section 13d for monetary damages. *See Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008) ("No other Circuit has found a private right of action for money damages under Section 13(d)."); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 620 (2d Cir. 2002) (same); *Liberty Nat. Ins. Holding Co. v. Charter*, 734 F.2d 545, 564 n.1 (11th Cir. 1984) (same).

CapStar also seeks an Order requiring Mr. Lawrence to divest, or dispose of, shares of CapStar stock that CapStar alleges Mr. Lawrence obtained "in violation of federal and state law and restrain any further purchases of CapStar shares until defendant comply with the law." (Compl., ECF No. 1, ¶ f, p. 17.) It does not appear that CapStar has a private right of action for this claimed relief either. *See Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) ("The harm caused by divestiture, in addition to the harm caused by the potential misuse of the private cause of action by incumbent management, clearly would outweigh the benefit that private enforcement … would provide to the shareholders."); *Liberty National*, 734 F.2d at 567 ("The creation of a private right of action on behalf of the firm would allow incumbent management to use corporate resources, rather than their own, to harass and burden aggressive outsiders"). CapStar also requests an award for its reasonable attorneys' fees and expenses, but there is no provision under Section 13d permitting that type of recovery. The only potential relief available to CapStar under Section 13d is perhaps injunctive relief requiring amendment to the Schedule 13D disclosures in the event of a finding that there is incorrect information contained therein. *See Florida Commercial Banks*, 772 F.2d at 1519. However, as set forth above, the language contained in Mr. Lawrence's Schedule 13D Disclosure is

11

completely accurate, and it would be misleading to the marketplace to require any different disclosures.[3]

Accordingly, CapStar has no viable cause of action or remedy under Section 13d of the Exchange Act of 1934, and is not entitled to take any discovery related to these claims, much less expedited discovery. Mr. Lawrence should be given the opportunity to fully present these arguments to the Court by way of his fully supported, impending motion to dismiss before allowing CapStar to engage in a fishing expedition and allowing Denny Bottorff to use this Court to intimidate Mr. Lawrence. *See Gearhart Indus. v. Smith Int'l*, 741 F.2d 707, 715 (5th Cir. 1984) ("Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts") (citations omitted); *Liberty National*, 734 F.2d at 567 ("To permit the issuer to oust the new stockholder simply because he made a false filing would tip the balance towards management, thereby injuring existing investors. Moreover, incumbent management could solidify its position by subjecting to suit any outsider who accumulated more than 5% of the shares of the company, and thus discourage such accumulations. The threat of this sort of litigation might remove from the field a player whose self-interest is to monitor management, and who is poised to mount a proxy fight or a tender offer.").

---

[3] Mr. Lawrence's statement that he may purchase additional shares of CapStar stock if market conditions and the price of the stock make it desirable to do so is an accurate statement. A statement made with any more specificity than that would have been speculative and potentially misleading (e.g., a statement that he planned to acquire additional shares could have ended up being false if the stock price rose, the market conditions changed, or Mr. Lawrence decided he did not need any additional shares in his portfolio). *See Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937 (2d Cir. 1969) ("It would be as serious an infringement of these regulations to overstate the definiteness of the plans as to understate them").

12

B.    MR. LAWRENCE WILL DEMONSTRATE THAT CAPSTAR DOES NOT HAVE A PRIVATE RIGHT OF ACTION UNDER THE CHANGE IN BANK CONTROL ACT OF 1978.

In his impending motion to dismiss, Mr. Lawrence will likewise demonstrate that the Change in Bank Control Act of 1978 does not give CapStar a private right of action to assert any claims under that Act. The Change in Bank Control Act was intended as a general public welfare statute and resulted from Congress's concern over the "undue concentration of control of banking activities," "not with the well-being of national banks, bank holding companies or their shareholders." *Marx v. Centran Corp.*, 747 F.2d 1536, 1549 (6th Cir. 1984) (citations omitted). The Act provides, generally, that the Federal Reserve Board may not approve an individual or bank holding company's application to acquire a controlling interest in a bank under certain circumstances and creates a legislative and regulatory scheme governing the authority of the Federal Reserve Board and the remedies available to the Federal Reserve Board to enforce its authority. *Id.* The Sixth Circuit made clear in *Marx* that there is no private right of action under the Change in Bank Control Act of 1978. *Id.* at 1550 (*citing Quaker City National Bank v. Hartley*, 533 F. Supp. 126 (S. D. Ohio 1981)).

Accordingly, because CapStar has no private right of action under the Change in Bank Control Act, Count II of its Complaint will fail upon the Court's consideration of Mr. Lawrence's forthcoming motion to dismiss.

Moreover, even if the Act provided CapStar a private right of action, its claim that Mr. Lawrence has not filed a notification of crossing the ten percent (10%) ownership threshold is rendered moot by Mr. Lawrence's filing of the requisite notice on October 26, 2017 (Lawrence Decl., Ex. 6) and the Reserve Bank's November 6, 2017 letter (Lawrence Decl., Ex. 7) indicating that Mr. Lawrence's notification appears complete and stating that the Reserve Bank is imposing the 60-day review period.

13

C.     MR. LAWRENCE WILL DEMONSTRATE THAT TENN. CODE ANN. § 45-2-107 IS INAPPLICABLE HERE, AND CAPSTAR'S CLAIMS UNDER THAT STATUTE SHOULD BE DISMISSED AS A MATTER OF LAW.

CapStar's third and final cause of action is a claim under Tenn. Code Ann. § 45-2-107, which provides generally that a "company" may "acquire, form or control a bank" only if it is a federally registered bank holding company.  That statute does not prohibit an individual from acquiring, forming or controlling a bank.  It only prohibits a "company" from doing so.  The statute provides that the term "company" has the meaning set forth in subsection 2(b) of the Bank Holding Company Act of 1956, 12 U.S.C. § 1841(b).  Tenn. Code Ann. § 45-2-107(a)(1)(D). The Bank Holding Company Act of 1956 defines "company" as "any corporation, partnership, business trust, association, or similar organization, or any other trust …, and shall not include a qualified family partnership."  12 U.S.C. § 1841(b).

Here, as demonstrated by the Schedule 13D Disclosure and Amendment Nos. 1-4, as well as the October 26, 2017 notification to the Federal Reserve, Mr. Lawrence has purchased all of the CapStar shares at issue here individually, and not directly or indirectly through any other entity.  (Schedule 13D Disclosure, Lawrence Decl. Ex. 1, Item 3; Amendment No. 1, Lawrence Decl. Ex. 2, Item 3; Amendment No. 2, Lawrence Decl. Ex. 3, Item 3; Amendment No. 3, Lawrence Decl. Ex. 4, Item 3; Amendment No. 4, Lawrence Decl. Ex. 5, Item 3; Notification, Lawrence Decl., Ex. 6, p. 3 n. 6.)  Accordingly, because Mr. Lawrence purchased and owns the CapStar shares individually, Tenn. Code Ann. § 45-2-107 is inapplicable.  CapStar, therefore, also fails to state a claim for relief under Tenn. Code Ann. § 45-2-107.  Because Mr. Lawrence's forthcoming motion to dismiss will demonstrate that CapStar has failed to state a claim for relief of all three of its causes of action, CapStar is not entitled to expedited discovery in this case.

14

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court deny CapStar's Motion for Expedited Discovery, and award Defendants such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

_/s/Christopher E. Thorsen_____
John S. Hicks (BPR # 10478)
Christopher E. Thorsen (BPR # 21049)
Austin K. Purvis (BPR # 32329)
BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN  37201
(615) 726-5600

*Counsel for Defendants*

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2017, I electronically filed a copy of the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all parties registered with the Court's electronic filing system.

Steven A. Riley
James N. Bowen
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737
sriley@rwjplc.com
jimbowen@rwjplc.com


Stephen R. DiPrima
Scott Stevenson
Adam Sowlati
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019-6150
Telephone: (212) 403-1000
Facsimile: (212) 403-2000


                     ___*/s/Christopher E. Thorsen*___
                     Christopher E. Thorsen