IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAPSTAR FINANCIAL HOLDINGS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:17-cv-01421 ) Judge Waverly D. Crenshaw, Jr. ) |
| GAYLON M. LAWRENCE, et al. | ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STAY LITIGATION**

Defendants Gaylon M. Lawrence, Jr. and The Lawrence Group[1] (collectively "Defendant" or "Mr. Lawrence") hereby file this Memorandum in support of the Motion to Stay Litigation (the "Motion") filed contemporaneously herewith.

**INTRODUCTION**

Defendant brings this Motion to inform the Court of recent developments that not only warrant a stay in this case, but also warrant dismissal of Plaintiff CapStar Financial Holdings, Inc.'s ("CapStar") lawsuit entirely. As of January 26, 2018, due to the exercise of stock warrants by other CapStar shareholders and directors -- and not through any action of Mr. Lawrence -- Mr. Lawrence no longer owns 10% or more of the outstanding shares of CapStar stock. This development, as explained in detail below, entirely moots CapStar's federal and state banking law claims (Counts II and III) against Mr. Lawrence in this lawsuit. Further, in light of this development, Mr. Lawrence has filed an Amendment to his Schedule 13D Disclosure with the SEC. This filing likewise moots CapStar's Section 13d claim set forth in Count I of its Complaint.

---

[1] Defendant Gaylon M. Lawrence objects to the inclusion of The Lawrence Group as a separate entity or as a properly named defendant in this action.

As these recent developments have taken place, the Federal Reserve Board ("FRB") continues to review Mr. Lawrence's Interagency Notice of Change in Control ("Change in Control Notice") that is the subject of Counts II and III of CapStar's Complaint. The FRB, which is the agency charged with protecting our nation's banking system, is considering -- and will decide -- the exact same issues that are at issue in this lawsuit. The FRB is considering and will determine: a) whether to accept Mr. Lawrence's Change in Control Notice; b) whether Mr. Lawrence is a suitable owner of 10% or more of CapStar stock; c) whether there are any issues with the nature and structure of Mr. Lawrence's business holdings; and d) whether "The Lawrence Group" is operating as a *de facto* bank holding company, and if so, whether it owns or controls the CapStar shares at issue in this lawsuit. Based upon the correspondence between the parties -- including both Mr. Lawrence and CapStar -- and the FRB, both Mr. Lawrence and the FRB anticipate a ruling from the FRB on these issues on or before May 1, 2018. The FRB's decisions on these issues ultimately will be dispositive of this case. Thus, a stay is warranted until the FRB makes its decision.

## **RELEVANT FACTS**

**A.    Mr. Lawrence No Longer Owns 10% of the Common Stock of CapStar.**

As set forth in the Complaint and in Mr. Lawrence's Declaration in support of the pending Motion to Dismiss, as of October 16, 2017, Mr. Lawrence had acquired 10.2% of the outstanding common stock of CapStar. (Compl. ECF No. 1 ¶ 23; ECF No. 20-5.) Specifically, as set forth in his Amendment No. 4 to his Schedule 13D Disclosure, Mr. Lawrence had acquired 1,156,675 shares of the then-outstanding 11,346,498 shares of CapStar common stock, for a total ownership position of 10.2%. (ECF No. 20-5, p. 3.)

Since October 16, 2017, however, through the exercise of stock warrants by CapStar shareholders and directors other than Mr. Lawrence, CapStar has issued additional common stock. So much so, in fact, that despite the fact that Mr. Lawrence has neither bought nor sold any CapStar stock since October 16, 2017, his ownership percentage has dropped from 10.2% down to 9.9%. As set forth in CapStar's Fourth Quarter Earnings Report ("Q4 Report") filed with the SEC, as of January 25, 2018, a total of 11,582,026 shares of CapStar common stock have now been issued -- an increase of 235,528 shares since October 16, 2017. (Declaration of Christopher E. Thorsen ("Thorsen Decl."), Ex. 1.) This increase in the total amount of issued shares has reduced Mr. Lawrence's percentage ownership in CapStar shares to 9.9%[2] -- thus dropping Mr. Lawrence below the 10% presumptive control threshold that is critical to CapStar's claims under the Change in Bank Control Act and Tenn. Code Ann. § 45-2-107.

**B.    The Federal Reserve Board Continues to Carefully Consider Mr. Lawrence's Request to Purchase Up To 15% of CapStar's Stock.**

Meanwhile, as Mr. Lawrence's percentage ownership in CapStar has been diluted by the issuance of additional stock, the FRB has continued to carefully consider Mr. Lawrence's Change in Control Notice, including his request to acquire up to 15% of CapStar's outstanding shares. (Change in Control Notice, ECF No. 20-6.) Since CapStar's filing of the Complaint, the FRB has been actively communicating with both Mr. Lawrence and CapStar regarding Mr. Lawrence's Change in Control Notice. (Thorsen Decl. ¶ 4, Ex.4.) The FRB has submitted numerous additional requests for information from Mr. Lawrence regarding all of the issues relevant to CapStar's banking claims in this lawsuit. (*Id.*) The FRB has requested additional information from Mr. Lawrence regarding the timeliness of his Change in Control Notice, the

---

[2] Mr. Lawrence has acquired 1,156,675 shares of CapStar stock. (Amendment No. 4, ECF No. 20-5 p. 3.) As of January 25, 2018, a total of 11,582,026 shares of CapStar common stock have been issued. (Q4 Report, Thorsen Decl. Ex. 1 p. 8.) Mr. Lawrence's 1,156,675 shares divided by the total 11,582,026 outstanding shares of CapStar common stock equals 9.9897%.

3

nature and structure of Mr. Lawrence's financial and non-financial business holdings, the nature and structure of "The Lawrence Group," and whether Mr. Lawrence personally owns the CapStar stock. (*Id.* at ¶ 5.) Mr. Lawrence has been very cooperative with the FRB in providing the additional information requested by the FRB in connection with its decision-making process on these issues. (*Id.* at ¶¶ 4-5.) Likewise, CapStar has been very active in communicating with the FRB in opposition to Mr. Lawrence's application, making the very same claims and arguments it has asserted in this litigation. (*Id.* at ¶¶ 4, 6) In fact, within 48 hours of producing documents to CapStar's counsel in this case, CapStar's counsel turned right around and submitted hundreds of pages of those documents to the FRB. (*Id.* at ¶¶ 4, 6.)

The Federal Reserve has recently extended the time for processing Mr. Lawrence's application to March 14, 2018 (*id.* at ¶ 4) and statutorily, the FRB may only extend the time period for its decision one additional 45 day period after March 14, 2018. 12 U.S.C. § 1817(j). Therefore, the FRB <u>must</u> issue an opinion on Mr. Lawrence's application on or before May 1, 2018.

**C.    Mr. Lawrence Has Filed An Amended Schedule 13D Disclosure.**

Upon learning that he had dropped below the 10% ownership threshold in CapStar stock, Mr. Lawrence filed Amendment No. 5 to his Schedule 13D Disclosure (Amendment No. 5). (Thorsen Decl. ¶ 7, Ex. 2.) As set forth in Amendment No. 5, Mr. Lawrence disclosed that his ownership position had fallen below 10% as the result of the exercise by others of CapStar stock warrants. (*Id.* at p. 2.) Likewise, Mr. Lawrence disclosed that he has filed his Change in Control Notice seeking permission to purchase up to 15% of CapStar's common stock, but that the FRB is still considering his application. (*Id.* at p. 3.) Mr. Lawrence also stated in the amendment that while his application was pending before the FRB he will not purchase any additional shares of

4

CapStar stock. (*Id.*) Finally, Mr. Lawrence disclosed that if the FRB approved his application to acquire up to 15% of CapStar stock, he may purchase additional shares of CapStar stock up to 15% if the overall market conditions, the availability of CapStar stock at a favorable price, and Mr. Lawrence's other investment opportunities are favorable at that time. (*Id.*)

**ARGUMENT**

**I.   LEGAL STANDARD REGARDING THE COURT'S POWER AND DISCRETION TO STAY LITIGATION PENDING BEFORE IT.**

A court's power to stay a case is "incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936); *see also Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 2007) ("Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.").

Here, in light of the new facts set forth above, the Court should stay this case pending the FRB's decision on Mr. Lawrence's pending application. First, a stay is warranted under the primary jurisdiction doctrine because the FRB is the administrative agency with specialized knowledge and competency to decide the very claims at issue in this lawsuit. Second, a stay is also appropriate applying the traditional stay factors used by district courts in this Circuit. Both avenues warrant a stay in this case.

**II.  THE COURT SHOULD GRANT A STAY UNDER THE PRIMARY JURISDICTION DOCTRINE PENDING THE FRB'S DECISION.**

When a defendant is involved in parallel administrative proceedings, district courts in this Circuit apply the primary jurisdiction doctrine to determine whether a stay is appropriate. The doctrine "'arises when a claim is properly cognizable in court but contains some issue within the

5

special competence of an administrative agency.'" *United States v. Any and All Radio Station Transmission Equip.*, 204 F.3d 658, 664 (6th Cir. 2000) (*citing United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997)). The primary jurisdiction doctrine exists to provide "uniformity in adjudication and the belief that the decision-maker with the most expertise and broadest perspective regarding a statutory or regulatory scheme will be most likely to resolve the issue correctly." *Id.* (citation omitted); *see also Alltel Tenn., Inc. v. Tenn. Public Serv. Comm'n*, 913 F.2d 305, 310 (6th Cir. 1990) ("The principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions.").

"[T]he outstanding feature of the [primary jurisdiction] doctrine is . . . its flexibility permitting . . . courts to make a workable allocation of business between themselves and the agencies." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010). While no strict test exists to determine application of the doctrine, courts have deferred matters to agencies for the following reasons: (1) to advance regulatory uniformity, (2) to answer a question within the agency's discretion, and (3) to benefit from technical or policy considerations within the agency's expertise. *Id.*

As explained in detail below, Congress intended that the technical and complex problems involved in the application and enforcement of the Change in Bank Control Act and the Bank Holding Company Act should be resolved, at least in the first instance, by the body of experts that is the FRB. *See Orbanco, Inc. v. Security Bank of Oregon*, 371 F. Supp. 125, 130 (D. Ore 1974) ("They know the competitive realities of the banking business. This subject is outside the conventional experience of judges."). Here, the FRB -- the body of experts -- is carefully

6

considering the very issues that are at issue in this lawsuit, *i.e.*, whether Mr. Lawrence has complied with the applicable banking laws and regulations, whether and to what extent he will be permitted to purchase the shares of CapStar stock at issue in this lawsuit, whether "The Lawrence Group" is a *de facto* bank holding company, and, if so, whether it owns or controls the CapStar shares at issue. The FRB is in a much better position than the Court (1) to advance regulatory uniformity in this case and across the banking industry, (2) to answer these questions, which are expressly within the agency's discretion, and (3) to benefit from technical or policy considerations within the agency's expertise in making these determinations. As such, the Court should stay this case pending the FRB's decision.[3]

### 1. CapStar's Claim Under The Change In Bank Control Act ("CBCA").

CapStar asserts that Mr. Lawrence violated the CBCA by not filing his Change in Bank Control Notice with the Federal Reserve before crossing the ten percent (10%) ownership threshold. (*See* Compl., ECF No. 1 at ¶¶ 47-49). As explained at length in Defendant's Motion to Dismiss and supporting documents, CapStar's CBCA claim fails as a matter of law because there is no private right of action for banks or bank holding companies to bring claims under the CBCA. (*See* Mem. In Supp. of Mot. to Dismiss, ECF No. 23 pp. 19-20; Reply, ECF No. 36 pp. 3-4) (*citing, Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir. 1984); *Lingle v. PSB Bancorp., Inc.*, 123 F. App'x 496, 501 (3rd Cir. 2005); *Quaker City Nat'l Bank v. Hartley*, 533 F. Supp. 126, 128-29 (S. D. Ohio 1981); *Texas First Nat'l Bank v. Wu*, 347 F. Supp. 2d 389, 401 (S.D. Tex. 2004); *Nat'l Bank of Georgia v. First Nat'l Bank Holding Corp.*, 723 F. Supp. 1501,

---

[3] As further grounds for a stay pending resolution by the FRB, the *Chevron* doctrine will likely apply and demand that the Court give due deference to the FRB's interpretations of the federal banking statutes and regulations at issue here. *See Interamericas Invs. v. Board of Governors of the Fed. Reserve Sys.*, 1997 U.S.App.LEXIS 12695, at *17 (5th Cir. Apr. 16, 1997) (interpretation of the BHCA is entrusted to the Board; therefore, that interpretation is due the deference demanded by *Chevron USA v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L.Ed.2d 694, 104 S. Ct. 2778 (1984)).

7

1506 (N.D. Ga. 1989); *Gianakas v. Siensa*, 649 F. Supp. 1033, 1037 (N.D. Ill. 1986); Liberty Bell Bank v. Deitsch, 2008 U.S. Distr. LEXIS 71303, *8 (D. N.J. Sept. 9, 2008)).

These courts all found that Congress, in passing the CBCA, intended to give the FRB broad power to review proposed bank acquisitions. *See e.g.*, *Nat'l Bank of Georgia*, 723 F. Supp. at 1505 (*citing Quaker City Nat'l Bank*, 533 F. Supp. at 128). Further, these courts have held that Congress intended the CBCA to strengthen the power of the FRB by giving it primary jurisdiction, not strip away its power by granting concurrent jurisdiction with the district courts. *See id.* The civil enforcement powers granted to the FRB by the CBCA are substantial. *See id.* Sanctioning a private right of action under the CBCA "would run counter to the enforcement scheme envisioned by Congress" in passing the CBCA. *See id.*

This same analysis denying plaintiffs like CapStar a private right of action applies in determining whether the Court should stay this case under the primary jurisdiction doctrine. Clearly, this widely-adopted analysis by the Courts demonstrates that Congress intended the FRB to have the power to determine the propriety of proposed acquisitions and that the FRB has the specialized expertise to make these determinations to best protect our federal banking system. Because the FRB is the agency with the particularized expertise, and because Mr. Lawrence's application is squarely before the FRB for determination, the Court should stay this case under the primary jurisdiction doctrine until the FRB makes its determination.

Moreover, CapStar's claim against Defendant for violating the CBCA is now rendered moot because Mr. Lawrence, through no act of his own, now owns less than 10% of CapStar's outstanding stock. The purpose of the CBCA is "to enhance and maintain the public confidence in the banking system by preventing a change in control of a national bank that could have adverse effects on the bank's financial stability or management resources [or] the bank's

customers…." 12 C.F.R. § 5.50(e). The CBCA requires that a person provide the Federal Reserve 60 days' prior written before acquiring "control" of a publicly traded bank. *See* 12 U.S.C. § 1817(j)(1). The federal regulations governing the definition of "control" state that there is "presumptive control" once a person acquires 10% or more of any class of voting shares. 12 C.F.R. § 225.41(c)(2). Simply put, since Mr. Lawrence no longer owns more than 10% of CapStar's stock, he no longer has presumptive "control" of CapStar. Because Mr. Lawrence no longer owns 10% or more of CapStar's stock and has filed his CBCA Notice seeking permission to acquire up to 15% of CapStar's stock, which application remains pending before the FRB, there is no question that Mr. Lawrence is in full compliance with the CBCA and the applicable regulations. CapStar's CBCA claim (to the extent it as a private right of action to assert it at all) is now moot.

However, even if not moot, CapStar will not be harmed by a stay here because Mr. Lawrence has not, and will not, purchase any additional shares of CapStar while his application is pending before the FRB. The FRB, not this Court, should decide this issue. *See Orbanco*, 371 F. Supp. at 130 (holding that Congress gave the FRB primary jurisdiction over these issues and staying the case until the FRB made its rulings). Therefore, the Court should stay this litigation pursuant to the primary jurisdiction doctrine.

### 2. CapStar's Claim Under Tenn. Code Ann. § 45-2-107.

CapStar also asserts that Mr. Lawrence violated Tenn. Code Ann. § 45-2-107.[4] That statute provides, in pertinent part, that a "company" that is not a federally registered bank holding company cannot "acquire, form or a control a bank." Tenn. Code Ann. § 45-2-107(a)(3). CapStar claims that "The Lawrence Group" is a "company" that is in "control" of CapStar in

---

[4] Defendant also argues in his Motion to Dismiss that CapStar has failed to state a claim for which relief can be granted under Tenn. Code Ann. § 45-2-107. (Mem. In Supp. Mot. to Dismiss, ECF No. 23 pp. 20-21.)

9

violation of the statute. (Compl., ECF No. 1 at ¶ 37). The Tennessee statute relies entirely on the federal Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1841, for the definitions of "company" and "control".

Like the CBCA, Congress has given the FRB full authority to enforce the BHCA. Here, these issues of whether "The Lawrence Group" is a *de facto* bank holding company and whether it owns or controls the CapStar stock are issues that are squarely before the FRB on Mr. Lawrence's pending application. Accordingly, the primary jurisdiction doctrine applies and this Court should stay this litigation pending a decision by the FRB.

"The legislative history of the BHCA reveals that the Act was intended as a general public welfare statute. The express purpose of the Act was to regulate 'the growth of bank holding companies' for the 'public welfare.'" *Marx*, 747 F.2d at 1549. As the Sixth Circuit in that case held (as have the other courts to consider the issue), "Congress was concerned with the 'undue concentration of control of banking activities,' not with the well-being of national banks, bank holding companies or their shareholders." *Id.* (*citing Lewis v. B.T. Investment Managers, Inc.*, 447 U.S. 27, 46, 64 L. Ed. 2d 702, 100 S. Ct. 2009 (1980)). Again, like with the CBCA, Congress intended to give the FRB broad discretion in enforcing the BHCA. (*Id.*) Because of the degree of discretion granted to the FRB and the limited judicial review, inferring a private cause of action under the BHCA would be "inconsistent with, indeed disruptive of, the legislative scheme." *Id.*

Here, CapStar has asserted its claim that "The Lawrence Group" is operating as *de facto* bank holding company under the Tennessee statute -- not the BHCA (presumably because they could not make a good-faith argument that there is a private right of action under the BHCA, as discussed above). However, because the Tennessee statute expressly and exclusively relies on

10

the BHCA to define what is and what is not permitted, and because the FRB is currently deciding these very issues regarding Mr. Lawrence's application under the BHCA, the primary jurisdiction doctrine dictates that the Court should stay this litigation pending the FRB's ruling on these issues.

In carrying out this legislative scheme, the BHCA defines "company" as "any corporation, partnership, business trust, association, or similar organization." 12 U.S.C. § 1841(b). The BHCA provides that a company has "control" over a bank if: (1) the company owns, controls, or has the power to vote 25% or more of any class of voting securities of the bank; (2) the company controls the election of a majority of directs or trustees of the bank; or (3) the FRB determines that the company exercises a controlling influence over the management or policies of the bank. 12 U.S.C. § 1841(a)(2)(A-C). Again, as discussed above, a company has presumptive control if it owns 10% or more of the stock. 12 C.F.R. § 225.41(c)(2). It should be noted here -- because Mr. Lawrence acquired CapStar's shares personally and he continues to own them as such -- that neither the Tennessee statute, nor the BHCA referenced therein, prohibit an individual from acquiring a controlling interest in a bank. *See generally* Tenn. Code Ann. § 45-2-107; *see also First National Bank of Blue Island Employee Stock Ownership Plan v. The Board of Governors of the Federal Reserve System*, 802 F.2d 291, 293-94 (7th Cir. 1986) (the BHCA's definition of "company" excludes individuals); FRB Interpretive Letter/Ruling No. 4-424, 1978 WL 33808, *3 (FRB Nov. 17, 1978) (while companies owned by common owner acting in concert to acquire stock are acting as de facto partnership or association under the BHCA, "[t]he Board's determination herein does not preclude [owner] from acquiring personally shares of [bank] without board approval").

The FRB is currently reviewing and analyzing these very issues that are at the heart of CapStar's claims under the Tennessee statute (and, thus, the BHCA). Based upon Mr. Lawrence's application and the correspondence between the Parties and the FRB in connection with his pending application, the FRB is gathering information regarding the nature of the ownership of the CapStar stock. *i.e.*, whether owned personally by Mr. Lawrence or by some other entity or association, and is taking a fulsome look into that issue. Likewise, the FRB is engaged in a fulsome review regarding the nature and structure of Mr. Lawrence's business holdings, and has specifically sought substantial information regarding what "The Lawrence Group" is, whether it has any sort of ownership structure apart from Mr. Lawrence individually, and whether it owns or controls the CapStar stock in any way. Finally -- and dispositively -- the FRB is deciding whether it will allow Mr. Lawrence to acquire between 10% and 15% of CapStar's stock under the BHCA. Therefore, because all of these issues are squarely before the FRB -- the agency with the expertise to enforce these statutes and regulations on a uniform basis across the industry -- the Court should stay this litigation under the primary jurisdiction doctrine.

A stay is further warranted here due to CapStar's claim being rendered moot in light of Mr. Lawrence falling under the 10% threshold. Even if CapStar's claim that "The Lawrence Group" is a bank holding company were true (which it is not), there is no prohibition under the Tennessee statute on an unregistered bank holding company owning less than 10% of CapStar's outstanding stock. *See generally* Tenn. Code Ann. § 45-2-107. Thus, even if CapStar's allegations are true, CapStar's claim under the Tennessee statute is now moot because neither Mr. Lawrence nor "The Lawrence Group" own more than 10% of CapStar's outstanding shares. Again, there is no threat of irreparable (or other) harm here if a stay is entered because Mr.

Lawrence is now under the 10% threshold, and the FRB is currently considering Mr. Lawrence's request for permission to purchase up to 15% of CapStar's stock.

As the agency having the most experience and knowledge of these subjects, the FRB's decision on Mr. Lawrence's application will be dispositive of these issues. Furthermore, in the event either party is dissatisfied with the FRB's decision under either the CBCA or the BHCA, there are an appellate procedures in place within the FRB for any ruling made by the FRB (*see* Board of Governors of the Federal Reserve System Notice Re: Section 309 of the Riegle Community Development and Regulatory Improvement Act of 1994, Intra-Agency Appeals Process (copy attached)), and once those procedures are exhausted, the parties have appellate remedies through the Circuit Court. *See* 12 U.S.C. § 1848 (BHCA appellate review); 12 U.S.C. § 1817(j)(5) (CBCA appellate review). In light of the new facts and the pending FRB review of Mr. Lawrence's application, continuing forward with this litigation on the same issues being decided by the FRB is duplicative and has the potential for duplicitous results. As such, the FRB, and not this Court, should maintain primary jurisdiction over these issues. *Charvat*, 630 F.3d at 466. For these reasons, and the fact that no harm will result to CapStar, the Court should stay this litigation pending a ruling from the FRB.

   **3. CapStar's Claim Under Section 13(d) of the Exchange Act.**

Finally, CapStar asserts that Defendant violated Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d), by "falsely disavowing any plan to acquire control of CapStar or additional stock in the bank," and by "failing to disclose that Lawrence's purchases of CapStar shares were in violation of federal and Tennessee banking law. (Compl., ECF No. 1, ¶¶ 42-44). Defendant demonstrated in his Motion to Dismiss that CapStar's Section 13(d) claims fail because (1) a plain reading of Mr. Lawrence's Schedule 13D Disclosure and Amendment Nos. 1-

4 reveals that Mr. Lawrence disclosed to the marketplace all of the information required to be disclosed under Section 13(d); (2) there is no private right of action available to CapStar for all, or part, of the relief it requested under Section 13(d); and (3) CapStar failed to allege any irreparable harm and is, thus, not entitled to injunctive relief as a matter of law. (Mem. in Supp. of Mot. to Dismiss, ECF No. 23 pp. 6-19.) For these reasons, CapStar's Section 13(d) claims fail as a matter of law. Nevertheless, now that Mr. Lawrence owns less than 10% of outstanding CapStar stock, and in light of Mr. Lawrence's filing of Amendment No. 5 to his Schedule 13D Disclosure (Thorsen Decl., Ex. 1.), this case should be stayed until the FRB has made their decision on Mr. Lawrence's application.

On February 7, 2018, Mr. Lawrence filed his Amendment No. 5 to his Schedule 13D Disclosure, which provides the following: that his ownership position had fallen below 10% as the result of the exercise by others of CapStar stock warrants that: he has filed his Change in Control Notice seeking permission to purchase up to 15% of CapStar's common stock; the FRB is still considering his application; he will not purchase additional shares of CapStar while his application is pending before the FRB; and, if the FRB approved his application to acquire up to 15% of CapStar stock, he may purchase additional shares of CapStar stock up to 15% if the overall market conditions, the availability of CapStar stock at a favorable price, and Mr. Lawrence's other investment opportunities are favorable at that time. (Amendment No. 5; Thorsen Decl. Ex. 2 pp. 2-3.)

With the filing of Amendment No. 5, CapStar's Section 13(d) claim, to the extent it ever had one, is now moot. Mr. Lawrence has kept the investing public apprised of his purchases of CapStar stock as well as his intentions regarding whether he intended to acquire or dispose of CapStar stock in the future. (ECF Nos. 20-1, 20-2, 20-3, 20-4, 20-5.) Now, with Mr. Lawrence's

14

most recent filing, he has disclosed his updated stake in the company, his pending application to purchase as much as 15% of CapStar's stock, the pending FRB review of that application, that he will not purchase additional shares in CapStar stock pending its review, and the circumstances upon which he may acquire additional shares if the FRB approves of his application. (Amendment No. 5, Thorsen Decl. Ex. 2.) Accordingly, CapStar's Schedule 13D claims, to the extent it even had any such claims, are now moot. And even if not moot, because there is no threat of ongoing or imminent harm (Mr. Lawrence will not acquire any additional CapStar stock pending the FRB's decision), this Court's time and resources, as well as the Parties' respective time and resources, are best spent awaiting the binding decision from the FRB. Accordingly, a stay is warranted under the primary jurisdiction doctrine.

**III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS CASE UNDER ITS INHERENT AUTHORITY TO CONTROL ITS OWN DOCKET APPLYING THE TRADITIONAL STAY FACTORS.**

"In exercising its substantial discretion to determine whether to grant a stay, a district court generally considers (1) any prejudice to the non-moving party if a stay is granted, (2) any prejudice to the moving party if a stay is not granted, and (3) the extent to which judicial economy and efficiency would be served by the entry of a stay." *Tenn. ex rel. Cooper v. McGraw-Hill Cos., Inc.*, No. 3:13-00193, 2013 WL 1785512, at *6 (M.D. Tenn. Apr. 25, 2013). All three of these factors weigh in favor of granting a stay pending the outcome of the FRB's decision in this case.

    1.    **CapStar Will Not Be Prejudiced By a Stay.**

CapStar cannot demonstrate to this Court that it will be prejudiced by a stay pending the FRB's decision. As set forth above, the FRB's decision here will be determinative of Mr. Lawrence's acquisition of the CapStar stock. If the FRB decides that Mr. Lawrence is qualified and allowed to retain the stock he has purchased and is able to purchase up to 15% of CapStar's

15

stock (which he is confident will occur), then the parties will abide by that decision of the regulators. Likewise, if the FRB decides that Mr. Lawrence should not be permitted to purchase up to 15% of CapStar's stock or that "The Lawrence Group" constitutes a *de facto* bank holding company (which it does not), then that decision will be determinative. If either party is unhappy with the FRB's ultimate decision, as set forth in the preceding section, there are ample appellate procedures in place for them to appeal the FRB's ruling, both internally and ultimately to the Circuit Court. Furthermore, the stay is not indefinite--the FRB is statutorily required to make its decision on Mr. Lawrence's application on or before May 1, 2018. Thus, CapStar will not be prejudiced by staying this matter until the FRB's decision.

2. **Defendant Will Be Prejudiced Absent A Stay.**

On the other hand, Mr. Lawrence will be prejudiced if he is forced, as CapStar wishes, to litigate the exact same claims on two fronts. Thus far, Mr. Lawrence has incurred substantial costs litigating this matter while at the same time communicating and providing substantial information to the FRB on all of these identical issues. Moreover, CapStar is aggressively opposing Mr. Lawrence's application with the FRB, and Mr. Lawrence is forced to respond to CapStar's repeated correspondence and demands through the FRB process in addition to this litigation -- again, all on the identical issues in both venues. Mr. Lawrence is highly prejudiced by CapStar's insistence that he be forced to litigate this case on multiple fronts. This is particularly true here because the parties will be bound by the FRB's decision regardless of what transpires in this action. Finally, as an owner of 9.9% of CapStar's stock, Mr. Lawrence is likewise harmed by CapStar's duplicative legal expenses incurred by CapStar's management in pursuing its position in two separate venues.

As set forth above, there is no prejudice to Plaintiff here, but even if there was, "the prejudice . . . caused by a delay . . . is outweighed by the hardship to [Defendant] and the

16

interests of judicial economy." *Cajun Offshore Charters, LLC v. BP Prods. N. Am., Inc.*, No. 10-1341, 2010 WL 2160292, at *2 (E.D. La. May 25, 2010); *see also McGraw-Hill*, 2013 WL 1785512, at *6 ("In sum, the Court finds that a stay is appropriate because any prejudice to [plaintiff] would be minimal and far less than the harm that could befall [defendant] were the stay not granted."). This factor also weights in favor of granting a stay.

        3.      <u>Judicial economy and efficiency would be served by the entry of a stay.</u>

Judicial economy and efficiency is often "the factor weigh[ing] most heavily in favor of a stay." *Reynolds v. Geico Corp.*, 2017 WL 815238, at *5 (D. Or. Mar. 1, 2017). Here, for many of the same reasons articulated above, judicial resources would be best served by granting a stay because the FRB is ultimately deciding the precise issues before this Court. *See, e.g., Michigan Bell Tele. Co. v. MFS Intelenet of Michigan, Inc.*, 16 F. Supp. 2d 828, 833-34 (W.D. Mich. 1998) (finding stay appropriate in light of anticipated decision by Federal Communications Commission where "the FCC's interpretation of th[e] legal question is entitled to due deference," and "it may have an effect on the outcome" of the case). The FRB's decision will be binding on the Parties and will not only affect the outcome of this case, it will be dispositive. This Court's resources, as well as the resources of the Parties, are best served by issuing a stay in this case pending the FRB's decision.

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that this Court stay this case pending the FRB's decision on Mr. Lawrence's application, which is expected to be issued on or before May 1, 2018.

17

Case 3:17-cv-01421 Document 58 Filed 02/07/18 Page 17 of 18 PageID #: 1074

Respectfully submitted,

   */s/Christopher E. Thorsen*
John S. Hicks (BPR # 10478)
jhicks@bakerdonelson.com
Christopher E. Thorsen (BPR # 21049)
cthorsen@bakerdonelson.com
Austin K. Purvis (BPR # 32329)
apurvis@bakerdonelson.com
BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
(615) 726-5600

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 7, 2018, I electronically filed a copy of the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all parties registered with the Court's electronic filing system, including:

>Steven A. Riley
>James N. Bowen
>RILEY WARNOCK & JACOBSON, PLC
>1906 West End Avenue
>Nashville, TN 37203
>Telephone: (615) 320-3700
>Facsimile: (615) 320-3737
>sriley@rwjplc.com
>jimbowen@rwjplc.com
>
>Stephen R. DiPrima
>Scott Stevenson
>Adam Sowlati
>WACHTELL, LIPTON, ROSEN & KATZ
>51 West 52nd Street
>New York, New York 10019-6150
>Telephone: (212) 403-1000
>Facsimile: (212) 403-2000

               */s/Christopher E. Thorsen*
               Christopher E. Thorsen